IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Amy Marie Bell, | ) | Civil Action No. 8:14-cv-03647-MGL-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for supplemental security income ("SSI").[2]  For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

On October 20, 2011, Plaintiff filed an application for SSI, alleging disability beginning January 1, 2008.  [*See* R. 173–75.]  Plaintiff, through counsel, subsequently amended her onset date to October 20, 2011.  [R. 42–43.]  The claim was denied initially and on reconsideration by the Social Security Administration ("the Administration").  [R.

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

62–91.]  Plaintiff requested a hearing before an administrative law judge ("ALJ") and on

May 30, 2013, ALJ Nicole S. Forbes-Schmitt conducted a de novo hearing on Plaintiff's

claim.  [R. 39–61.]

The ALJ issued a decision on June 28, 2013, finding Plaintiff was not disabled under

the Social Security Act ("the Act").  [R. 20–32.]  At Step 1,[3] the ALJ found Plaintiff had not

engaged in substantial gainful activity since October 20, 2011, the application date.  [R. 25,

Finding 1.]  At Step 2, the ALJ found Plaintiff had the following severe impairments:

degenerative disc disease, degenerative joint disease of the right knee, osteoarthritis of the

left knee, chronic obstructive pulmonary disease, and depression.  [R. 25, Finding 2.]  The

ALJ also found Plaintiff had a non-severe impairment of hypertension and alleged right

thumb paralysis, though the ALJ deemed that to be a non-medically determinable

impairment.  [R. 25.]  At Step 3, the ALJ determined Plaintiff did not have an impairment

or combination of impairments that met or medically equaled one of the impairments listed

at 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 25, Finding 3.]  The ALJ specifically

considered Listings 1.02, 1.04, 3.02A, and 12.04.  [R. 25–27.]  Additionally, the ALJ

concluded that the combined effects of Plaintiff's impairments were not at least equal in

severity to those described in Listings 1.00, 3.00, and 12.04.  [*Id.*]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the

ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual functional
> capacity to perform light work as defined in 20 CFR

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the
Applicable Law section, *infra*.

416.967(b). Specifically, the claimant is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours in an 8-hour day except that the claimant can frequently use her bilateral lower extremities for foot controls, can occasionally climb ladders, ropes and scaffolds and can occasional crawl. She must avoid concentrated exposure to fumes, dust, chemicals, noxious odors, and poor ventilation. The claimant can occasionally work with the public. She has no limitation in working in proximity to coworkers but can only occasionally work in coordination with coworkers..

[R. 27, Finding 4.]  At Step 4, the ALJ noted Plaintiff had no past relevant work.  [R. 30, Finding 5]; but based on her age, education, RFC, and the testimony of a vocational expert, jobs existed in significant numbers in the national economy that Plaintiff could perform [R. 31, Finding 9].  Accordingly, the ALJ concluded Plaintiff had not been under a disability, as defined in the Act, since October 20, 2011, the date the application was filed.  [R. 31, Finding 10.]

Plaintiff requested Appeals Council review of the ALJ's decision but the Council declined.  [R. 3–7. ]  Plaintiff filed this action for judicial review on September 15, 2014. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and that remand is necessary for the following reasons:

1. The ALJ's RFC determination is unsupported by substantial evidence, as she failed to properly account for Plaintiff's mental and physical limitations [Doc. 16 at 7–14];

2. The ALJ's credibility determination is unsupported by substantial evidence [*id*. at 14–15]; and

3. The ALJ's Step 5 determination is unsupported by substantial evidence, as the Vocational Expert's testimony was based on an incomplete hypothetical question which did not account for Plaintiff's mental and physical limitations [*id*. at 15–16].

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence and that:

1. The ALJ complied with the regulations when weighing Dr. Singh's opinion [Doc. 17 at 6–8]; and

2. The ALJ reasonably determined that Plaintiff was not fully credible [*id*. at 8–10].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

4

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and

5

when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985);*see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant

6

may produce further evidence on remand.").  After a remand under sentence four, the court

enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*,

941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be
> taken before the Commissioner of Social Security, but only
> upon a showing that there is new evidence which is material
> and that there is good cause for the failure to incorporate such
> evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the

basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

determination of disability at the time the application was first filed; (2) the evidence is

material to the extent that the Commissioner's decision might reasonably have been

different had the new evidence been before him; (3) there is good cause for the claimant's

failure to submit the evidence when the claim was before the Commissioner; and (4) the

claimant made at least a general showing of the nature of the new evidence to the

reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C.

§ 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by*

*amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth
in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the
Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating
a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152,
2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107,
2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No.

six, the parties must return to the court after remand to file modified findings of fact.

*Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and

does not enter a final judgment until after the completion of remand proceedings. *See*

*Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C.

§ 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured

for benefits, who are not of retirement age, who properly apply, and who are under a

disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or which
> has lasted or can be expected to last for a continuous period
> of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations

have reduced the statutory definition of disability to a series of five sequential questions.

*See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency"

in considering disability claims). The ALJ must consider whether (1) the claimant is

---

2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 416.920.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* § 416.974–.975.

9

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 416.909, the ALJ will find the claimant disabled without

considering the claimant's age, education, and work experience.[5]     20 C.F.R. § 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. § 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).   To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").   Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7]   20

---

[5]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 416.969a(a).   A nonexertional limitation is one that

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

---

affects the ability to meet the demands of the job other than the strength demands.  *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  § 416.969a(c)(1).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the

13

opinion, 20 C.F.R. § 416.927(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also Conley v.*

*Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re

15

not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518

(4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ

must consider all of a claimant's statements about his symptoms, including pain, and

determine the extent to which the symptoms can reasonably be accepted as consistent

with the objective medical evidence.  20 C.F.R. § 416.928.  Indeed, the Fourth Circuit has

rejected a rule which would require the claimant to demonstrate objective evidence of the

pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the

Commissioner to promulgate and distribute to all administrative law judges within the circuit

a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v.*

*Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the

following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth
> Circuit (North Carolina, South Carolina, Maryland, Virginia and
> West Virginia), Social Security Ruling (SSR) 88-13, Titles II
> and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying
> physical or [m]ental impairment that could reasonably be
> expected to cause pain is shown by medically acceptable
> objective evidence, such as clinical or laboratory diagnostic
> techniques, the adjudicator must evaluate the disabling effects
> of a disability claimant's pain, even though its intensity or
> severity is shown only by subjective evidence.  If an underlying
> impairment capable of causing pain is shown, subjective
> evidence of the pain, its intensity or degree can, by itself,
> support a finding of disability.  Objective medical evidence of
> pain, its intensity or degree (i.e., manifestations of the
> functional effects of pain such as deteriorating nerve or muscle
> tissue, muscle spasm, or sensory or motor disruption), if
> available, should be obtained and considered.  Because pain
> is not readily susceptible of objective proof, however, the
> absence of objective medical evidence of the intensity,

> severity, degree or functional effect of pain is not
> determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements

by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485;

*see also* 20 C.F.R. § 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the

record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ

must articulate specific and adequate reasons for doing so, or the record must be obvious

as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Although credibility determinations are generally left to the ALJ's discretion, such

determinations should not be sustained if they are based on improper criteria.  *Breeden*,

493 F.2d at 1010 ("We recognize that the administrative law judge has the unique

advantage of having heard the testimony firsthand, and ordinarily we may not disturb

credibility findings that are based on a witness's demeanor.  But administrative findings

based on oral testimony are not sacrosanct, and if it appears that credibility determinations

are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**RFC Analysis**

Plaintiff contends the ALJ's RFC assessment is not an accurate reflection of her limitations because the ALJ failed to adhere to the treating physician rule and gave little weight to the opinions of limitations by Plaintiff's treating physician, Neena Singh, M.D. ("Dr. Singh").  [Doc. 16 at 8.]  The Commissioner contends the ALJ properly evaluated the medical opinions of record and discounted Dr. Singh's opinion based on its inconsistency with her own treatment records and other evidence of record.  [Doc. 17 at 6–8.]

The Administration has provided a definition of RFC and explained what a RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule . . . .

SSR 96–8p, 61 Fed.Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted).  The RFC assessment must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945.  *See id.*  Only after this identification and assessment may

18

RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy. *Id.*

Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to medically determinable impairments. It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the [claimant] had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.) Age and body habitus (i .e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the [claimant]'s medically determinable impairment(s) and related symptoms) are not factors in assessing RFC . . . .

*Id*. at 34,476. To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. *Id*. at 34,477. SSR 96-8p specifically states, "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted ." *Id*. at 34,478.

With respect to medical source opinions regarding a claimant's impairments and limitations, the ALJ is obligated to evaluate and weigh these medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined

19

the applicant and has a treatment relationship with the applicant." *Id.* (*quoting Mastro*, 270 F.3d at 178). The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). Additionally, Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996). However, not every opinion offered by a treating source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. § 416.927(d)(3) (stating an ALJ does not have to "give any special significance to the source of an opinion

on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairment or impairments meets or equals a listing, or the claimant has a certain residual functional capacity).

### Dr. Singh's Treatment Notes and Opinion

On December 28, 2012,[8] Dr. Singh completed a Mental Capacity Assessment for Plaintiff, noting the following limitations:

*Moderate limitations in the ability to*

1.    remember locations and work-like procedures;
2.    understand and remember very short and simple instructions; and
3.    understand and remember detailed instructions.

*Marked limitations in the ability to*

1.    maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.

*Extreme limitations in the ability to*

1.    carry out very short and simple instructions;
2.    carry out detailed instructions;
3.    maintain attention and concentration for extended periods;
4.    perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
5.    sustain an ordinary routine without special supervision;
6.    work in coordination with or in proximity to others without being distracted by them;
7.    make simple work-related decisions;
8.    complete a normal workday without interruptions from psychologically based symptoms;
9     complete a normal workweek without interruptions from psychologically based symptoms;
10    perform at a consistent pace with a standard number and length of rest periods;
11.    interact appropriately with the general public;

---

[8]The Court did not locate any treatment notes from Dr. Singh prior to December 28, 2012 and notes the ALJ did not mention any treatment notes prior to this date.

12. ask simple questions or request assistance;
13. accept instructions and respond appropriately to criticism from supervisors;
14. get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
15. respond appropriately to changes in the work setting;
16. be aware of normal hazards and take appropriate precautions;
17. travel in unfamiliar places or use public transportation; and
18. set realistic goals or make plans independently of others.

[R. 338–40.]  Dr. Singh noted that, in her professional opinion, Plaintiff would miss four or more days of work per month.  [R. 339.]  Dr. Singh also noted that the medical/clinical findings supporting these limitations included depression, anxiety, and medication usage. [R. 340.]  In describing the impact, if any, that the use of alcohol or other substances may have in arriving at this assessment, Dr. Singh noted "very."  [*Id*.]  In light of these extreme limitations, however, Dr. Singh concluded that Plaintiff could manage benefits in her own best interest.  [*Id*.]

Dr. Singh's treatment notes indicate that Plaintiff was seen on February 21, 2013 for cold symptoms and anxiety.  [R. 345.]  Plaintiff's chronic conditions included depression; osteoarthritis, generalized; hypertension, unspecified; and chronic obstructive pulmonary disease ("COPD").  [*Id*.]  On physical exam, Plaintiff's systems were normal. [R. 347.] Plaintiff was seen again by Dr. Singh on March 21, 2013 for a preventive health examination.  [R. 341.]  A review of her systems showed Plaintiff was positive for hot flashes, heat intolerance, and anxiety and negative for fatigue and night sweats, chronic cough, chest pain, abdominal pain, dysuria, difficulty sleeping, and joint pain and muscle weakness.  [R. 342.]  Findings on physical exam were normal, including no edema in her extremities;  normal  musculoskeletal  overview;  and  normal  psychiatric  review  with appropriate mood and affect.  [R. 343.]

On May 14, 2013, Dr. Singh completed an RFC Questionnaire for Plaintiff.  [R. 348–49.]  Dr. Singh indicated Plaintiff's impairments as including chronic back pain, knee pain, OA, and depression.  [R. 348.]  Dr. Singh indicated that the symptoms associated with Plaintiff's impairments were constantly severe enough to interfere with the attention and concentration she needs to perform simple work-related tasks and that Plaintiff's medications caused drowsiness.  [*Id*.]  Dr. Singh opined that during an 8-hour workday Plaintiff would need to recline or lie down in excess of a typical 15-minute break in the morning, 30 to 60 minute break for lunch, and 15-minute break in the afternoon.  [*Id*.]  Dr. Singh also estimated Plaintiff's functional limitations as follows:

1. able to walk half a city block without rest or significant pain;
2. able to sit 5 minutes and stand/walk 10 minutes at one time;
3. able to sit 1 hour and stand/walk 1 hour in an 8-hour workday;
4. must have a job that permits shifting positions at will from sitting, standing, or walking;
5. requires unscheduled breaks everyday for 30 minutes;
6. can never lift 20 pounds or more; occasionally lift 10 pounds; and frequently lift less than 10 pounds
7. can use the left hand 100% of the time and the right hand 50% of the time for grasping, turning, or twisting objects; fine manipulation; and reaching;
8. will be absent more than four times per month;
9. incapable of working an 8-hour day, 5 days a week on a sustained basis.

[R. 349.]

### The ALJ's Treatment of Dr. Singh's Opinion

The ALJ considered Dr. Singh's May 2013 RFC Questionnaire but gave it little weight.  [R. 28.]  The ALJ explained as follows:

> As this opinion is inconsistent with Dr. Singh's own treatment notes, and with the remaining medical evidence of record, the undersigned has given it little weight.  Dr. Singh has had only a few office visits with the claimant, and her notes generally reflect minimal findings on examination.  February 2013 notes indicate that the claimant had a normal musculoskeletal

23

> examination with no complaints. (Exhibit 21F). March 2013 notes reflect the claimant's normal respiratory and musculoskeletal findings. At that time, the claimant reported that her anxiety was stable with medication and she was urged to quit smoking. As such, the undersigned has given little weight, as well, to Dr. Singh's finding that the claimant's mental impairments cause moderate to extreme limitations on her ability to perform work-related activities. (Exhibit 20F). The most recent treatment notes provided by Dr. Singh indicate that the claimant's anxiety has responded well to Zoloft.

[R. 28–29.] When considering Dr. Singh's opinion in light of the other evidence of record, the ALJ noted that upon examination by James Way, Ph.D. ("Dr. Way"), in December 2011,

> the claimant was alert, responsive and cooperative. While she appeared mildly depressed, mildly anxious, and mildly irritated, she had no evidence of thought disturbance, and her thought processed were logical throughout her session. Her cognitive speed was normal and persistence and concentration were both adequate. On the MMSE, the claimant scored a 27 out of 30 points, putting her in the range of normal cognitive functioning. She is able to understand and follow simple instructions. The claimant's irritability appeared secondary to situational depression. Dr. Way diagnosed the claimant with depression, recurrent, moderate. Nothing in his assessment contradicts the above residual functional capacity and, as such, is given some weight.

[R. 29.] The ALJ also considered the January 2012 consultative examination conducted by Dr. Harriett Steinert:

> On presentation, the claimant complained of back pain, foot pain, chronic obstructive pulmonary disease, depression, and knee pain. The claimant acknowledged that she had not had an MRI and was not aware of the findings of her x-rays. The claimant stated that she has shortness of breath due to her chronic obstructive pulmonary disease and admitted that she continues to smoke a pack of cigarettes per day. According to the claimant, she had a soft-tissue infection of her right finger MP joint for which she had surgery, but this is not reflected in the medical evidence of record. The claimant indicated that six

24

months prior, she was smoking three packs of cigarettes per day.

On examination, the claimant was in no acute distress and was pleasant and cooperative. She was able to get on and off of the examination table without difficulty by herself. She had full range of motion of her cervical spine. She had full range of motion on all joints except for the finger indicated above. She complained of pain with flexion of her left knee. No sensory or motor deficits were noted in any extremity. She had no muscle atrophy and, contrary to Dr. Singh's statement, the claimant's grip strength was found to be normal and equal bilaterally. She was able to walk across the room with a normal gait and no assistive device. The claimant's only noted limitation was that she could not extend her back, but she had no tenderness to palpation of her spine. Dr. Steinert noted the claimant's complaints but assigned no functional limitations. The undersigned finds that this examination is an accurate reflection of the claimant's condition.

[R. 30.]

### Discussion

Plaintiff challenges the ALJ's RFC finding, arguing that the ALJ failed to rationally articulate grounds for her decision to discount Dr. Singh's treatment notes; improperly discounted Dr. Singh's mental limitations based on a statement that Plaintiff's "anxiety is responding well to Zoloft"; failed to properly evaluate the necessary factors for determining when a treating physician's opinion is entitled to controlling weight; and failed to consider objective evidence supporting Dr. Singh's findings. [Doc. 16 at 11–14.] Upon review, however, the Court disagrees.

A review of the ALJ's decision shows that the ALJ evaluated Dr. Singh's opinion in accordance with 20 C.F.R. § 416.927, and that she adequately indicated and explained the weight she assigned to Dr. Singh's opinion and other medical opinions based on the medical records as a whole. The ALJ specifically noted that Dr. Singh had had only a few

office visits with Plaintiff and that her notes generally reflected minimal findings on examination. [R. 28.] Such a finding is a sufficient basis on which to discount a treating physician's opinion. *See Craig*, 576 F.3d at 590 (holding that an ALJ may properly discount a treating physician's opinion that is inconsistent with the physician's own treatment notes). The ALJ also expressly detailed the evidence of record from Dr. Steinert and Dr. Way that contradicted the extreme limitations cited by Dr. Singh. [R. 29–30.] This finding also supports the ALJ's decision to discount Dr. Singh's opinion. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002) ("When a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight"); *Burch v. Apfel*, 9 F.App'x 255 (4th Cir. 2001) (holding an ALJ did not err in giving physician's opinion little weight where the physician's opinion was not consistent with her own progress notes.).

Further, the Court finds no error in the ALJ's decision to discount Dr. Singh's mental limitations based on Dr. Singh's own treatment notes indicating that Plaintiff's "anxiety is responding well to Zoloft," as this notation was not the only basis on which the ALJ discounted Dr. Singh's cited mental limitations. As an initial matter, the ALJ found Plaintiff's mental impairments did not meet listing criteria for disability under Listing 12.04 [R. 26], and Plaintiff did not challenge this finding. Additionally, a mental status evaluation performed by Dr. Way resulted in findings of only mildly depressed mood and irritability; no acute distress; no evidence of hallucinations, delusions, or other thought disturbance; and logical thought processes throughout the session. [R. 254.] Finally, Dr. Singh's own treatment notes indicate that Plaintiff showed normal or appropriate mood and affect on psychiatric exam during her March 2013 visit [R. 343], about three months after Dr. Singh's

26

mental capacity assessment establishing the extreme limitations discounted by the ALJ.

After a review of the decision and the record in this case, the undersigned finds that the ALJ properly considered and evaluated Dr. Singh's opinion as part of her analysis of the overall record and evidence in this case and provided an explanation for her treatment of Dr. Singh's opinion.  The record contains substantial evidence to support the findings and conclusions of the ALJ, and Plaintiff's arguments to the contrary are without merit. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding it is the responsibility of the ALJ, and not of the courts, to weigh the evidence and resolve conflicts in that evidence); *see also Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) ("What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning.'" (alterations in original)).    Accordingly, the decision of the Commissioner should not be reversed on this ground.

**Credibility**

Plaintiff challenges the ALJ's credibility determination, arguing the ALJ improperly found Plaintiff not credible due to her continuing to smoke despite COPD; improperly discounted Plaintiff's credibility because of lack of surgical intervention; and improperly determined that Plaintiff's "complaints appear largely subjective, as they are not supported by images or other clinical findings." [Doc. 16 at 14–15.]  The Commissioner contends the ALJ sufficiently addressed Plaintiff's subjective complaints, evaluated Plaintiff's statements against the record as a whole, and properly determined that Plaintiff's subjective complaints were not fully credible in light of the medical evidence.  [Doc. 17 at 8.]

The determination of whether a person is disabled by pain or other symptoms is a two-step process. First, the ALJ must determine whether objective medical evidence shows the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. *Craig*, 76 F.3d at 593, 595. Only after Plaintiff makes this threshold showing is the ALJ obligated to evaluate the intensity and persistence of the claimant's pain, and the extent to which it affects his ability to work. *Id*. Whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record. SSR 96-7p, 61 Fed. Reg. at 34,485. The credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*; *see also Hammond*, 765 F.2d at 426 (stating that the ALJ's credibility determination "must refer specifically to the evidence informing the ALJ's conclusions").

The following is a nonexhaustive list of relevant factors the ALJ should consider in evaluating a claimant's symptoms, including pain: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, received to relieve the symptoms; and (6) any measures the claimant has used to relieve the

symptoms. 20 C.F.R. § 416.929(c)(3). If the ALJ points to substantial evidence in support of his decision and adequately explains the reasons for his finding on the claimant's credibility, the court must uphold the ALJ's determination. *Mastro*, 270 F.3d at 176 (holding that the court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency).

### The ALJ's Credibility Determination

At step one, the ALJ confirmed the presence of objective medical evidence showing the existence of medical impairments which could reasonably be expected to produce the pain or other symptoms alleged by Plaintiff. [R. 28.] Next, the ALJ moved on to the step two analysis, finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not entirely credible. [*Id.*] The ALJ explained as follows:

> While the claimant has received medical treatment since her alleged onset date, the medical evidence of record does not reflect any objective abnormalities to suggest that she is incapable of performing the above residual functional capacity assessment. The claimant has taken nothing other than Aleve, a non-steroidal anti-inflammatory drug, for her back and Celebrex for her knees. Nothing other than conservative treatment has been recommended; the claimant has not been recommended for knee or back surgery. Nothing in the medical evidence of record supports her assertion that she has to take two naps each day. The undersigned also notes that the claimant's continued cigarette smoking despite her chronic obstructive pulmonary disease diagnosis, evidences non-compliance, and indicates that the claimant's impairments may not be as severe as alleged. Taken as a whole, the claimant's testimony undermines her credibility.
>
> The claimant has complained of some joint and back pain on examination, but these complaints appear largely subjective, as they are not supported by images or other clinical findings. (Exhibit 18F).

29

[*Id.*]  The ALJ also found that "[t]he claimant's work history does not enhance the credibility of her allegations of disability.  The claimant has never worked on more than a sporadic basis and has never demonstrated a consistent motivation to work before the date of which she alleges becoming disabled.  As such, the undersigned is led to believe that the claimant is motivated by monetary gain to establish disability for herself in order to avoid working." [*Id.*]

### Discussion

The undersigned concludes that the ALJ conducted the proper credibility analysis under the Social Security Rules and cited substantial evidence to support her finding that Plaintiff's subjective complaints were not entirely credible.  The ALJ explained the correct legal standard for evaluating subjective complaints of pain in great detail; recognized and conducted the two-step analysis; and clearly articulated the correct legal lens through which to view Plaintiff's subjective complaints of pain.  [*See* R. 27.]  Contrary to Plaintiff's argument, Plaintiff's failure to stop smoking or even attempt to stop smoking supports the ALJ's finding that Plaintiff's allegations about disabling limitations from her COPD were not fully credible.  *See, e.g., Hambrick v. Astrue*, C/A No. 5:07-00779, 2009 WL 899423, at *8 (S.D.W. Va. March 30, 2009) (finding plaintiff's failure to follow directions to stop smoking detracted from her claim of disability); *Johnson v. Bowen*, 866 F.2d 274, 275 (8th Cir. 1989) (finding that failure to follow a prescribed treatment was inconsistent with complaints that the alleged impairment was disabling).  Additionally, a conservative treatment history is a proper basis for discounting Plaintiff's pain complaints.  *See Coffey-Watson v. Astrue*, Civil Action No. 3:09-1479-HFF-JRM, 2010 WL 3878918, at *10 (D.S.C. June 25, 2010)

(citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996)), *Report and Recommendation adopted by* 2010 WL 3878860. Further, while the ALJ may not discount subjective complaints of pain merely because objective evidence of the existence of pain is lacking, the Fourth Circuit has noted that "a claimant's allegations about [his] pain . . . need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges []he suffers." *Craig*, 76 F.3d at 595. The undersigned finds that the ALJ thoroughly considered the record as a whole and gave substantiated reasons for finding Plaintiff's allegations concerning the severity of her symptoms not credible. That some of the evidence could have theoretically supported a different finding is irrelevant. "Credibility is the province of the ALJ." *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1499 (10th Cir. 1992). A reviewing court should "generally treat credibility determinations made by an ALJ as binding upon review" where the ALJ has given specific, legitimate reasons for disbelieving the claimant's testimony. *Gosset v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988). Accordingly, the decision of the Commissioner should not be reversed on this ground.

**Vocational Expert Testimony**

Plaintiff argues that the ALJ erred by relying on the vocational expert's testimony when that testimony was based on a flawed hypothetical. Plaintiff's argument relies on her argument, discussed above, that the ALJ did not properly formulate Plaintiff 's RFC.

As stated, once the claimant reaches Step 5 of the sequential evaluation, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform, *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002); the ALJ may use a vocational expert to assist in this analysis. "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [the] claimant's impairments." *Walker*, 889 F.2d at 50 (citations omitted).

Here, the ALJ presented a hypothetical to the vocational expert setting out the limitations included in the ALJ's RFC assessment, and the ALJ testified jobs existed in the national economy that Plaintiff could perform with that RFC. [R. 57–58.] Because the undersigned has found no reversible error in the ALJ's RFC determination, the undersigned further finds the ALJ posed a proper hypothetical question, fairly setting out Plaintiff's impairment, and reasonably relied on proper vocational expert testimony.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the decision of the Commissioner be AFFIRMED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

November 30, 2015
Greenville, South Carolina